IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ASHLEY BONNER,

        Plaintiff,

vs.                                                          No. CIV 07-1205 MV/WDS

RUDY E. CASAUS, in his individual
capacity, JOHN MURPHY, in his
individual capacity, GLORIA LOVATO,
in her individual capacity, SANDOVAL
COUNTY,

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendants' Motion for Summary Judgment **[Doc. No. 27]**, filed on July 31, 2008, and fully briefed on October 2, 2008. Having considered the motion, the memoranda in support and in opposition, and the relevant law and being otherwise fully informed, the Court finds that the motion is not well taken and will be **DENIED**.

### I. Factual Background

Plaintiff started her employment with the Sandoval County Assessor's Office on February 9, 2006. Pl.'s Resp., Ex. 1, Bonner Aff. ¶2. Defendants Casaus and Murphy hired Plaintiff on an emergency basis as a Data Entry Clerk in the Assessor's Office. *Id*. That term of employment ended on April 7, 2006. *Id.* On April 10, 2006, Defendants Casaus and Murphy renewed Plaintiff's term and assigned Plaintiff to the position of Appraiser Assistant. *Id.* ¶3. Before the new position was to end on June 9, 2006, Defendant Lovato, the Office Manager, offered Plaintiff the position of verifier and assistant to the office's Senior Verifier. *Id.* ¶4.

Plaintiff accepted the offer. On June 12, 2006, Defendants Casaus and Murphy hired Plaintiff as an independent contractor. Pl's Resp., Ex. 1, Bonner Aff. ¶6.

On July 13, 2006, Defendant Casaus made Plaintiff part of his staff as a Data Entry Clerk. *Id.* ¶7. In this position, Plaintiff states she consistently had the highest work production totals and the lowest error percentage rate in the office. *Id.* ¶8. Moreover, Plaintiff contends she never received a written reprimand throughout her time as a county employee and was complimented for her work. *Id.*

Defendant Casaus was the Democratic Party's candidate for Sandoval County Assessor and the incumbent in the 2006 election. *Id.* ¶30. On Saturday morning, September 9, 2006, Defendant Casaus asked Plaintiff to come to his house and help build signs for his reelection campaign. *Id.* ¶32. Plaintiff did not help Defendant Casaus build signs. *Id.*

On October 13, 2006, Defendant Lovato asked Plaintiff whether she had voted. *Id.* ¶33. Because Plaintiff believed this was a private matter, she did not provide that information. Defendant Lovato also asked Plaintiff to walk door to door for Defendant Casaus's campaign on Saturday, October 14th and Sunday, October 15th. *Id.* Plaintiff explained to Defendant Lovato that she was not available on those days. Plaintiff contends Defendant Lovato's facial expression and her demeanor made it clear to her that Defendant Lovato was unhappy with her. *Id.* On the same day, Plaintiff was not invited to a lunch held for employees who were working on Defendant Casaus's campaign. *Id.* ¶34.

On October 16, 2006, Defendant Lovato asked Plaintiff to volunteer to campaign door to door for Defendant Casaus the weekend of October 21st and 22nd. *Id.* ¶35. Again, Plaintiff

informed Defendant Lovato that she was not available on those days. *Id.* Plaintiff claims Defendant Lovato frowned at her to show her disapproval. *Id.*

After Plaintiff refused to assist with Defendant Casaus's campaign, Plaintiff contends his attitude toward her began to change. Pl.'s Resp., Ex. 1, Bonner Aff. ¶36. Defendant Casaus stopped complimenting her work and gave her the cold shoulder. Plaintiff also noticed a change in Defendant Lovato's attitude toward her. *Id.* ¶37. Defendant Lovato was no longer friendly or respectful toward Plaintiff. Defendant Murphy's attitude also changed. He too stopped being respectful and friendly toward Plaintiff. *Id.*

In late October 2006, *The Rio Rancho Observer* published three letters to the editor criticizing Defendant Casaus and asking voters not to cast their ballots for him in the November election. *Id.* ¶39, Exs. 1-A through 1-C. On November 1, 2006, one week before the election, Defendant Murphy, Plaintiff's supervisor and the Treasurer of the Committee to Elect Rudy Casaus, asked Plaintiff to write a letter to *The Rio Rancho Observer* to defend Defendant Casaus against the allegations in the recently published letters. *Id.* ¶42. Defendant Murphy explained to Plaintiff he and Defendant Casaus suspected someone in the office had written the letters. Plaintiff informed Defendant Murphy she had not written any of the letters. Plaintiff also said she would not write a letter to *The Rio Rancho Observer* in defense of Defendant Casaus. *Id.* Defendant Murphy's facial expression and his tone of voice expressed his animosity toward Plaintiff. *Id.* Plaintiff expected to be fired for refusing to support Defendant Casaus's campaign.

On November 7, 2007, Defendant Casaus won the election. *Id.* ¶44. On the night of the election, Defendant Casaus held a victory party. He did not invite Plaintiff. The following night a county employee who had attended the victory party called Plaintiff. *Id.* ¶45. This employee

warned Plaintiff that he had overheard "bits and pieces" of conversation at the party and that "something strange was going on." *Id.* Plaintiff asked the employee if she was getting fired. The employee responded that Defendant Casaus had nothing to lose now and could do whatever he wanted. Pl.'s Resp., Ex. 1, Bonner Aff. ¶45. On November 9, 2006, two days after the election, Defendant Lovato handed Plaintiff a letter of termination. *Id.* ¶47. Defendant Casaus had signed the letter. The letter of termination stated no reason for Plaintiff's termination. When Plaintiff asked Defendant Lovato why she was being terminated, Defendant Lovato responded she did not need to have a reason or provide her with a reason for terminating her. *Id.* ¶48.

## II.  Standard of Review

The Court will grant summary judgment when there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The movant carries the burden of establishing there are no genuine issues of material fact, *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1609 (1970), but may discharge its burden by showing there is an absence of evidence to support the non-movant's case, *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554 (1986). Once the movant meets its burden, the burden shifts to the non-movant to demonstrate a genuine issue for trial on a material matter. *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). In making its summary judgment determination, the court looks at the pleadings and documentary evidence in the light most favorable to the non-movant, *Deepwater Invs., v. Jackson Hole Ski Corp.* 938 F.2d 1105, 1110 (10th Cir. 1991), and the movant must show beyond a reasonable doubt it is entitled to summary judgment, *Hicks v. City of Watonga, Okla.*, 942 F.2d 737, 743 (10th Cir. 1991).

However, once the burden shifts to the non-movant, that party may not rest on its pleadings but must set forth specific facts showing there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof. *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. at 2553. However, "the mere existence of some factual dispute between the parties will not defeat an otherwise properly supported motion." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2509-10 (1986). If the non-movant cannot make such a showing, after adequate time for discovery, summary judgment is mandated. *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. at 2552. The Court will consider Defendants' motion for summary judgment in light of these standards.

### III.  Discussion

**A.  Qualified Immunity**

Qualified immunity protects government officials from individual liability in a § 1983 action unless the officials violated clearly established constitutional rights. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982). When a defendant pleads qualified immunity, the plaintiff must then make a two-part showing. *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995). The plaintiff must first demonstrate that the defendant's actions violated a constitutional or statutory right. *Id.* The plaintiff must then show that the constitutional or statutory rights the defendant allegedly violated were clearly established at the time of the conduct at issue. *Id.*

In determining whether the right was clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039 (1987). The action alleged

to have violated a right does not have to have previously been held unlawful, however, "in light of pre-existing law the unlawfulness must be apparent." *Id.* "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Medina v. City and County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992).

In this case, Plaintiff alleges a violation of her First Amendment rights when she was fired for refusing to campaign for Defendant Casaus. Plaintiff contends Defendants Casaus, Lovato, and Murphy are not entitled to qualified immunity.[1]

It has long been clearly established that the First Amendment bars retaliation for protected speech and association. *See Crawford-El v. Britton*, 523 U.S. 574, 592, 118 S.Ct. 1584, 1594 (1998). "Where a government employer takes adverse action on account of an employee's political association and/or political beliefs, [the Court] appl[ies] the test as developed in the *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976)(plurality opinion), and *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980) line of cases." *Jantzen v. Hawkins*, 188 F.3d 1247, 1251 (10th Cir. 1999). "Where a government employer takes adverse action because of an employee's exercise of his or her right of free speech, [the Court] appl[ies] the balancing test from *Pickering v. Board of Educ.,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), and *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)." *Id.*

---

[1] Although Defendants characterize Plaintiff's claim as an infringement of her "constitutionally protected interest in freedom of expression," Plaintiff is alleging a violation of her freedom to associate. Thus, the *Pickering/Connick* balancing test is inapplicable.

*Elrod* and *Branti* established "that patronage does not justify the coercion of a person's political beliefs and associations." *O'Hare Truck Service, Inc. v. City of Northlake*, 518 U.S. 712, 718, 116 S.Ct. 2353, 2357 (1996). "Government officials may not discharge public employees for refusing to support a political party or its candidates, unless political affiliation is a reasonably appropriate requirement for the job in question." Id. at 714, 116 S.Ct. at 2355. To defeat Defendants' summary judgment motion, Plaintiff must establish a genuine dispute of fact that (1) political affiliation and/or beliefs were "substantial" or "motivating" factors behind her dismissal and (2) Plaintiff's position did not require political allegiance. *Barker v. City of Del City*, 215 F.3d 1134, 1138 (10th Cir. 2000). Political patronage need not be the sole reason for an employee's discharge, it need only constitute a substantial or motivating factor. *Mason v. Okla. Turnpike Auth.*, 115 F.3d 1442, 1452 (10th Cir. 1997)("[E]ven if the jury did believe there was a legitimate motive behind Mason's discharge, it still may have concluded that other illegitimate factors also motivated the decision.").

In this case, Defendants do not argue that Plaintiffs' position as a Data Entry Clerk required political allegiance. Thus, Plaintiff need only show that her refusal to campaign for Defendant Casaus reelection was a substantial or motivating factor behind her dismissal.

Defendants assert Plaintiff was a probationary employee and could be terminated for any legal reason. Additionally, Defendants claim they terminated Plaintiff because of reports that she engaged in workplace violence not because of her refusal to campaign for Defendant Casaus. Specifically, Defendants allege Plaintiff "elbowed [Dennis Valdez] in a rude and angry manner (mean spirited with the intention to hurt him)." Defs.' Mot. Summ. J.; Ex. A. However, Defendants admit "that the County has not located any documents in its possession referencing

[Plaintiff's] workplace violence towards Dennis Valdez." *Id.*; Ex. B.  To bolster their position, Defendants submitted a document indicating Dennis Valdez called law enforcement to report Plaintiff's behavior.  *Id.*; Ex. C (November 10, 2006 Computer Aided Dispatch Call Information).  However, the document indicates Mr. Valdez reported "an ex-coworker is threatening him and making threats to other people regarding him."  *Id.*  Mr. Valdez makes no mention of Plaintiff or being elbowed by her.  Moreover, Mr. Valdez made this call after Defendants had already terminated Plaintiff.  Additionally, Defendants did not contest Plaintiff's unemployment claim based on the alleged misconduct.  Finally, Defendants admit no one ever told Plaintiff about Mr. Valdez's allegation.  Pl.'s Reply; Ex. 2-L.

In support of their claim of workplace violence on the part of Plaintiff, Defendants also point to their answer to Plaintiff's Interrogatory No. 2, which states:

> INTERROGATORY NO. 2:  Please identify every meeting and communication regarding the alleged incident of workplace violence in which any county official(s) or employees(s) participated.
>
> ANSWER:  The Defendant objects to the extent that the Plaintiff seeks information protected from discovery by the attorney-client privilege.  Subject to this objection, and without waiving the same, Ms. Gerrard also recalls that Dennis Valdez came to her department to report Ms. Bonner's workplace violence towards him.  Mr. Valdez also informed a co-worker, Gerred Prairie and his supervisor, Ronny Cisneros, about the incident.  Mr. Casaus and Mr. Murphy were also informed about the incident.  Ms. Gerrard recalls one meeting where it was brought to her attention that Ms. Bonner had engaged in workplace violence.

Def.'s Mot. Summ. J.; Ex. C (Def. Sandoval County Responses and Objections to Plaintiff Ashley Bonner's First Set of Interrogatories to Defendant Sandoval County).  However, Ms. Gerrard did not document any of Mr. Valdez's allegations.  Considering that Plaintiff's workplace violence was allegedly the basis for her termination, it is difficult for the Court to

believe that Defendants did not document the incident when it was reported and never brought it to Plaintiff's attention.

Based on the evidence presented, the Court finds there exists a genuine issue of material fact as to whether Plaintiff's refusal to support Defendant Casaus's campaign for reelection was a substantial or motivating factor behind Defendants' decision to terminate her employment. Accordingly, Defendants are not entitled to summary judgment on the basis of qualified immunity and thus their motion for summary judgment as to this issue is denied.

**B.  Title VII/NM Human Rights Act- Racial Discrimination Claim**

Plaintiff does not present direct evidence of intentional discrimination; instead, she relies on circumstantial evidence. Thus, the Court analyzes Plaintiff's claim of discrimination under the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973). Under *McDonnell Douglas*, the plaintiff has the initial burden of establishing a prima facie case of discrimination. "At the prima facie stage of the *McDonnell Douglas* analysis, a plaintiff is only required to raise an inference of discrimination, not dispel the non-discriminatory reasons subsequently proffered by the defendant." *EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1193 (10th Cir.2000). At the prima facie stage, the plaintiff's burden is "not onerous," *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093 (1981), which is evidenced by the "small amount of proof necessary to create [an inference of discrimination]," *EEOC v. Flasher Co. Inc.*, 986 F.2d 1312, 1318 (10th Cir.1992).

If the plaintiff carries her initial burden, the burden shifts to the defendant to "articulate some legitimate nondiscriminatory reason" for the challenged workplace decision. If the defendant carries this burden, the plaintiff has an opportunity to prove that the legitimate reasons

the defendant offered were merely a pretext for discrimination. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824. The plaintiff need not present direct evidence of discriminatory intent in order to fulfill the "pretext" requirements; it is sufficient for the plaintiffs to present indirect evidence of discrimination by showing that "an employer's proffered explanation is unworthy of credence." *Randle v. City of Aurora*, 69 F.3d 441, 452 (10th Cir. 1995). However, "mere conjecture that [an] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." *Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir. 1988).

Additionally, this three-part burden-shifting analysis is modified when, as here, the plaintiff alleges reverse discrimination. *Notari v. Denver Water Dep't*, 971 F.2d 585, 588-89 (10th Cir. 1992). In such cases, a plaintiff "must, in lieu of showing that [she] belongs to a protected group, establish background circumstances that support an inference that the defendant is one of those unusual employers who discriminates against the majority." *Id*. at 589. If a plaintiff meets this burden, the remainder of the *McDonnell Douglas* analysis applies. If plaintiff does not meet this burden, she can also establish a prima facie case of disparate treatment under Title VII "with indirect evidence sufficient to support a reasonable probability, that but for the plaintiff's status the challenged employment decision would have favored the plaintiff." *Id.* at 590. However, a plaintiff "who attempts to state a prima facie case in this fashion is not entitled to rely on the presumption that is implicit in the *McDonnell Douglas* prima facie case analysis." *Id.*

Plaintiff contends she can establish a prima facie case for reverse discrimination. First, Plaintiff contends there is no dispute that Defendants fired her. Second, Plaintiff claims

Defendants cannot dispute that she was qualified for her position. Third, Defendants admit that Plaintiff's position was not eliminated but, in fact, filled with another individual.[2] Thus, Plaintiff contends the only issue is whether she can identify background circumstances that support an inference that Defendant Sandoval County is one of those unusual employers who discriminate against the majority.

Plaintiff presented the following evidence. The vast majority of employees in the Office of the Sandoval County Assessor are Hispanic. Defendant Casaus, the head of the office and the individual who made the decision to fire Plaintiff, is Hispanic. Some of the Hispanic employees were comfortable openly expressing their prejudice against Anglos. Hispanic employees received preferential treatment. Specifically, Plaintiff claims Sandoval County's history of failing to progressively discipline Hispanic employees in accordance with its own personnel ordinance suggests Hispanics received preferential treatment. Pl.'s Resp.; Ex. 2-F.

For example, when Defendant Casaus worked as an appraiser, he received a written reprimand for unethical conduct for having advised taxpayers regarding assessment discrepancies, and for "blatantly undervaluing properties in his own neighborhood." Pl.'s Resp.; Ex. 2-I. At that time, the county warned him that "further continuation of these infractions will result in termination." *Id.* A few months later, Defendant Casaus received a second reprimand for "acting unprofessionally," "in a harassing manner," and "in a threatening manner" with a

---

[2] Defendants argue Plaintiff cannot demonstrate that "the Defendants discriminate against the majority" because "Defendants have provided Plaintiff with evidence that she was replaced by an Anglo female over 40." Defs.' Mot. for Summ. J. at 5. However, Plaintiff does not need to show that her replacement was Hispanic, only that her position was not eliminated. *See Perry v. Woodward*, 199 F.3d 1126, 1135 (10th Cir. 1999)("Contrary to arguments advanced by Defendants, the Supreme Court has not adopted a test requiring a plaintiff to prove that his replacement does not share his protected attributes.").

taxpayer. *Id.* Nonetheless, the county did not terminate him, only threatened him with "more severe action." *Id.* Defendant Casaus received a third written reprimand for driving a county vehicle into a telephone pole, failing to report the accident, "and not being truthful about the accident." *Id.* Defendant Casaus received a fourth written reprimand for his "vulgar language and angry behavior." *Id.* Notwithstanding the county's progressive discipline policy, Defendant Casaus was never suspended or terminated. He remained working in the Assessor's office and eventually became the Sandoval County Assessor.

Similarly, Defendant Lovato was suspended for forty hours for excessive absenteeism, failing to deposit several months worth of checks, and failing to distribute several months worth of mail. Pl.'s Resp.; Ex. 2-H. The Sandoval County Treasurer warned Defendant Lovato that failure to change her behavior would result in more severe discipline, including dismissal. *Id.* Although Defendant Sandoval continued to have serious problems with absenteeism and tardiness for several years, she never received more severe discipline. *Id.*

On July 25, 2001, the Sandoval County Assessor issued Defendant Lovato a written reprimand for being drunk at work and for excessive absenteeism and frequent tardiness. *Id.* On that day, the Assessor had another employee drive Defendant Lovato home because of her intoxicated condition. Once at home, Defendant Lovato called several employees at the office and threatened them. The written reprimand indicates Defendant Lovato used offensive language. *Id.*

On January 29, 2004, Defendant Casaus suspended Defendant Lovato for two days without pay and required her to attend Alcoholics Anonymous. *Id.* The basis for the disciplinary action was for Defendant Lovato going to work on January 22, 2004, with the smell

of alcohol on her breath.  Prior to that day, employees had complained for several weeks to Defendant Casaus that Defendant Lovato was going to work with the smell of alcohol on her breath.  On January 22, 2004, Defendant Casaus confirmed the reports and smelled alcohol on Defendant Lovato's breath.  *Id.*  When Defendant Casaus asked Defendant Lovato to submit to a breath alcohol test, she refused.  Therefore, she was placed on Administrative Leave with Pay and sent home. The written reprimand made clear to Defendant Lovato that termination was a consequence of her infraction under the county's drug-free work place policy.  *Id*.

On January 29, 2004, Defendant Casaus issued Defendant Lovato another written reprimand for "unsatisfactory job performance."  Pl.'s Resp.; Ex. 2-H.  The basis for this written reprimand was for Defendant Lovato not being "forthright as to what [she] had completed."  *Id.*  Specifically, Defendant Lovato informed the Valuation Analyst she had entered the centrally assessed property data from the State into the Sandoval County records even though she knew she had not done so.  *Id.*  As a consequence of Defendant Lovato's misrepresentation, the certifications and calculations of the mil rates were in error for tax entities within Sandoval County.  This resulted in several other employees spending several hours resolving the problem.  Additionally, Sandoval County had to reissue tax bills for approximately 150 centrally assessed taxpayers.  The written reprimand informed Defendant Lovato that if she did not correct her behavior she "would be subject to further discipline up to and including termination."  *Id.*

On February 2, 2004, Defendant Casaus served Defendant Lovato with a Notice of Proposed Discipline and Informal Meeting.  *Id.*  The basis for the notice was Defendant Lovato's failure to report her February 6, 2003 arrest for DWI and the subsequent revocation of her driver's license.  Failure to report the incident was in violation of the county's policy. Defendant

Casaus proposed suspending Defendant Lovato for two days without pay and suspending her for one year from driving county vehicles. Defendant Casaus informed Defendant Lovato that her personnel file and past disciplinary record would be reviewed in arriving at a final decision. Pl.'s Resp.; Ex. 2-H. Defendant Casaus was unsuccessful in scheduling an informal meeting. As a result, Defendant Casaus offered to accept the proposed discipline. "Because [Defendant Lovato] was more than gracious in offering to take the proposed discipline without an informal meeting, it was agreed that [her] year would begin as of February 2, 2004." *Id.* Defendant Lovato eventually became the office manager.

Plaintiff also submitted an affidavit attesting she was the only woman in the office who was not Hispanic. Pl.'s Resp.; Ex. 1. Moreover, Plaintiff attested to several incidents where Hispanic employees were not disciplined for serious infractions or given preferential treatment by Defendant Casaus. *Id*.

Based on all the evidence, the Court finds that Plaintiff has identified background circumstances that would justify a presumption of discrimination, even though she is not a member of a racial minority. *See Reynolds v. School District No. 1*, 69 F.3d 1523 (10th Cir. 1995). Moreover, although Defendant articulated a non-discriminatory reason for terminating Plaintiff, nonetheless, Plaintiff raised a genuine issue of material fact on the question of pretext. Accordingly, Defendants' motion for summary judgment as to this claim is denied.

**C.  NM Human Rights Act– Age Discrimination**

The New Mexico Human Rights Act prohibits employment discrimination on the basis of age. N.M.Stat.Ann. §28-1-7(A) (1987). The New Mexico state courts have embraced the *McDonnell Douglas* burden-shifting analysis in age discrimination cases where there is an

absence of direct evidence of discrimination.  *See Cates v. Regents of the N.M. Inst. of Mining & Tech.*, 124 N.M. 633, 954 P.2d 65, 70 (N.M.1998).

Under *Cates,* Plaintiff can establish a prima facie case of age discrimination by establishing the following elements: (1) she was over forty years old; (2) she was qualified to continue in her position; (3) she was terminated; and (4) her position was filled by someone not a member of the protected class.  124 N.M. at 638-39.  In this case, Defendants presented evidence showing Plaintiff's position was filled by Ellen Kruse, a woman in her 70s.  *See* Defs.' Reply, Ex. H (Sandoval County document dated December 18, 2006, reflecting Plaintiff's replacement was Ms. Kruse who was born in 1931).  However, Plaintiff contends she was replaced by Frances Tenario, a 43 year-old woman.  *See* Pl.'s Resp.; Ex. 2-E (Interoffice Memorandum from Defendant Casaus to the Personnel Director informing her that Ms. Tenario would be replacing Plaintiff).  Thus, both Ms. Kruse and Ms. Tenario are in the protected class.

In *Cates*, both the Plaintiff and his alleged replacement were members of the protected class.  Nonetheless, the New Mexico Supreme Court noted that the federal Age Discrimination in Employment Act prohibited discrimination on the basis of age and not class membership.  124 N.M. at 638.  The court stated:

> The fact that one person in the protected class has lost out to another person in the protected class is thus irrelevant, so long as he (or she) has lost out *because of his [or her] age*.  However, the fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class.

*Id.* (internal citations and quotations omitted).  In this case, there is a genuine issue of material fact as to whether Ms. Tenario, a woman ten years younger than Plaintiff, replaced Plaintiff.  The substantial age difference between Plaintiff and Ms. Tenario would satisfy the fourth element.

Plaintiff also points to Defendant Casaus's preferential treatment of two women who were much younger than her. *See* Pl.'s Resp.; Ex. 1, Bonner Aff. ¶¶12-26. Accordingly, Defendants' motion for summary judgment as to this claim is denied.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment is **DENIED**.

**Dated** this 25th day of February, 2009.

_____
MARTHA VAZQUEZ
CHIEF UNITED STATES DISTRICT JUDGE

**Attorney for Plaintiff:**
Zachary A. Ives

**Attorneys for Defendants:**
Jonlyn M. Martinez